UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

TODD M. MUSHTARE,

                Plaintiff,

v.                                                                  7:14-CV-0826
                                                                              (GTS)
CAROLYN W. COLVIN, Comm'r of Soc. Sec.,

                Defendant.
_____

APPEARANCES:                                          OF COUNSEL:

CONBOY, McKAY, BACHMAN & KENDALL, LLP     LAWRENCE D. HASSELER, ESQ.
  Counsel for Plaintiff
307 State Street
Carthage, NY 13619

U.S. SOCIAL SECURITY ADMIN.                     FERGUS J. KAISER, ESQ.
OFFICE OF REG'L GEN. COUNSEL – REGION II
  Counsel for Defendant
26 Federal Plaza – Room 3904
New York, NY 10278

GLENN T. SUDDABY, United States District Judge

## DECISION and ORDER

        Currently before the Court, in this Social Security action filed by Todd M. Mushtare ("Plaintiff") against the Commissioner of Social Security ("Defendant" or "the Commissioner") pursuant to 42 U.S.C. § 405(g) are the parties' cross-motions for judgment on the pleadings. (Dkt. Nos. 10, 11.) For the reasons set forth below, Plaintiff's motion is denied and Defendant's motion is granted.

I.   **RELEVANT BACKGROUND**

   A.   **Factual Background**

Plaintiff was born on September 21, 1974. He has completed a high school education and one and a half years of community college. Plaintiff has had full time employment as an electrician apprentice, corrections officer and United States Army soldier, and part time employment as an electrical equipment assembler and machine operator. Generally, Plaintiff's alleged disability consists of a right ankle injury, right knee injury, torn right rotator cuff, depression, Post Traumatic Stress Disorder ("PTSD"), anxiety, Attention Deficit Disorder ("ADD"), arthritis, memory retention difficulties and insomnia. His alleged disability onset date is July 15, 2008, and his date last insured is December 31, 2013.

   B.   **Procedural History**

On July 24, 2011, Plaintiff applied for Social Security Disability Insurance. Plaintiff's application was initially denied, after which he timely requested a hearing before an Administrative Law Judge ("the ALJ"). On May 1, 2013, Plaintiff appeared, pro se, before the ALJ, Elizabeth W. Koennecke. (T. 90-117.) The ALJ advised Plaintiff of his right to be counseled by an attorney or some representative, but Plaintiff waived that right. (T. 92-93.) The ALJ issued a written decision finding Plaintiff not disabled under the Social Security Act on July 29, 2013. (T. 72-89.) On May 6, 2014, the Appeals Council denied Plaintiff's request for review, rendering the ALJ's decision the final decision of the Commissioner. (T. 3-9.) Thereafter, Plaintiff, now represented by counsel, timely sought judicial review in this Court.

## C. The ALJ's Decision

Generally, in her decision, the ALJ made the following six findings of fact and conclusions of law. (T. 77-86.) First, the ALJ found that Plaintiff had not engaged in substantial gainful activity since his alleged onset date. (T. 77.) Second, the ALJ found that Plaintiff's right ankle degenerative joint disease, alcohol abuse disorder, and a mental impairment (variously characterized) are severe impairments, but that Plaintiff's wrist pain, mild left ankle degenerative disease, left hip pain, mild degenerative disease of the cervical spine, right knee pain, degenerative disease of the right shoulder, pelvic pain and insomnia are not severe. (T. 78-79.) Third, the ALJ found that Plaintiff's impairments do not meet or medically equal one of the listed impairments located in 20 C.F.R. Part 404, Subpart P, Appendix. 1. (T. 79-81.) The ALJ considered Listings 1.02A, 12.04. 12.06, 12.08 and 12.09. (*Id.*) Fourth, the ALJ found that Plaintiff has the residual functional capacity ("RFC") to perform light work as defined in 20 C.F.R. § 404.1567(b).[1] (T. 81-84.) In addition, the ALJ found that Plaintiff retains the ability to understand and follow simple instructions and directions, perform simple tasks with supervision and independently, maintain attention and concentration for simple tasks, regularly attend to a routine and maintain a schedule, relate to and interact appropriately with others to the extent

---

[1] According to the regulations,

> [l]ight work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities.

20 C.F.R. § 404.1567(b).

necessary to carry out simple tasks, and handle simple work-related stress in that he can make decisions directly related to the performance of simple tasks in a position with consistent job duties that does not require [Plaintiff] to supervise or manage the work of others. (*Id*.) Fifth, and finally, the ALJ determined that while Plaintiff is unable to perform any past relevant work, there are jobs that exist in significant numbers in the national economy that Plaintiff can perform. (T. 84-86.)

## II. THE PARTIES' BRIEFINGS ON PLAINTIFF'S MOTION

### A. Plaintiff's Arguments

Plaintiff makes four separate arguments in support of his motion for judgment on the pleadings. First, Plaintiff argues that the ALJ erred in failing to classify his degenerative disc disease of the right shoulder as a severe impairment. (Dkt. No. 10 at 17-18 [Pl.'s Mem. of Law].) Second, Plaintiff argues that the ALJ erred by failing to follow the treating physician rule when weighing the opinions of medical sources (*Id*. at 18-22.) Third, Plaintiff argues that the ALJ erred in failing to properly assess his RFC. (*Id.* at 22-25.) Fourth, and finally, Plaintiff argues that the ALJ erred at step five of the sequential analysis by failing to obtain the opinion of a vocational expert. (*Id.* at 24-25.)

### B. Defendant's Arguments

In response, Defendant makes three arguments. First, Defendant argues that the ALJ's determination at step two of the sequential analysis was supported by substantial evidence. (Dkt. No. 11 at 7-8 [Def.'s Mem. of Law].) Second, Defendant argues that the ALJ properly evaluated the medical opinions of record. (*Id.* at 9-13.) Third, and finally, Defendant argues that the ALJ's RFC determination was supported by substantial evidence. (*Id*. at 12.)

## III. RELEVANT LEGAL STANDARD

### A. Standard of Review

A court reviewing a denial of disability benefits may not determine de novo whether an individual is disabled. *See* 42 U.S.C. § 405(g); *Wagner v. Sec'y of Health & Human Servs.*, 906 F.2d 856, 860 (2d Cir. 1990). Rather, the Commissioner's determination will only be reversed if the correct legal standards were not applied, or it was not supported by substantial evidence. *See Johnson v. Bowen*, 817 F.2d 983, 986 (2d Cir. 1987) ("Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct legal principles."); *Grey v. Heckler*, 721 F.2d 41, 46 (2d Cir. 1983); *Marcus v. Califano*, 615 F.2d 23, 27 (2d Cir. 1979).

"Substantial evidence" is evidence that amounts to "more than a mere scintilla," and has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427 (1971). Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. *See Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

"To determine on appeal whether the ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988).

If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." *Rosado v. Sullivan*, 805 F. Supp. 147, 153 (S.D.N.Y. 1992). In other words, this Court must afford the Commissioner's determination considerable deference, and may not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a de novo review." *Valente v. Sec'y of Health & Human Servs.*, 733 F.2d 1037, 1041 (2d Cir. 1984).

### B. Standard to Determine Disability

The Commissioner has established a five-step evaluation process to determine whether an individual is disabled as defined by the Social Security Act. *See* 20 C.F.R. § 404.1520. The Supreme Court has recognized the validity of this sequential evaluation process. *See Bowen v. Yuckert*, 482 U.S. 137, 140-42, 107 S. Ct. 2287 (1987). The five-step process is as follows:

> First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity. If he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities. If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations. If the claimant has such an impairment, the [Commissioner] will consider him disabled without considering vocational factors such as age, education, and work experience; the [Commissioner] presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity. Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work. Finally, if the claimant is unable to perform his past work, the [Commissioner] then determines whether there is other work which the claimant could perform. Under the cases previously discussed, the claimant bears the burden of the proof as to the first four steps, while the [Commissioner] must prove the final one.

*Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir. 1982).

## IV. ANALYSIS

### A. Whether the ALJ Erred in Failing to Find Plaintiff's Degenerative Joint Disease of the Right Shoulder Severe

After carefully considering the matter, the Court answers this question in the negative, generally for the reasons stated in Defendant's memorandum of law. (Dkt. No. 11 at 7-8 [Def.'s Mem. of Law].) The Court would only add the following analysis.

According to Social Security Regulations, "[a]n impairment or combination of impairments is not severe if it does not significantly limit a [claimant's] physical or mental ability to do basic work activities." 20 C.F.R. § 404.1521(a). The standard for a finding of severity under the second step of the sequential analysis has been found to be de minimis, and is intended only to screen out the truly weakest of cases. *Davis v. Colvin*, No. 11-CV-0658, 2013 WL 1183000, at *8 (N.D.N.Y. Feb. 27, 2013) (citing *Dixon v. Shalala*, 54 F.3d 1019, 1030 (2d Cir.1995). At step two, the claimant bears the burden to provide medical evidence demonstrating the severity of his condition. *See* 20 C.F.R. § 404.1512(a); *Bowen*, 482 U.S. at 146.

Here, the ALJ found that Plaintiff's early degenerative joint disease of the right shoulder impairment, among others, was not a severe impairment. (T. 79.) Plaintiff argues that the ALJ erred in failing to find his degenerative joint disease of the right shoulder a severe impairment based on objective medical evidence, Plaintiff's treatment and the opinion of Plaintiff's treating physician. Defendant counters that the ALJ properly determined that Plaintiff's right shoulder pain was not a severe impairment because the record does not include any evidence that it significantly limited Plaintiff's ability to do basic work activities. In any event, Defendant adds, because the ALJ found other of Plaintiff's impairments severe, and because the ALJ stated that

7

all of Plaintiff's impairments were considered in determining Plaintiff's RFC, even those that are not severe, any error in finding Plaintiff's shoulder impairment not severe was harmless.

To be sure, x-rays of Plaintiff's right shoulder taken in 2011 and 2012 reveal early degenerative changes. (T. 246, 589.) However, it was not until October of 2013, three months after the ALJ's decision in this matter, that an x-ray of Plaintiff's right shoulder revealed severe degenerative arthritis. (T. 825.) In any event, even considering the finding of severe arthritis, the evidence fails to support a finding that Plaintiff's ability to do basic work activities was significantly limited. While Dr. Ayesha Aziz, Plaintiff's treating physician, noted diminished range of motion of Plaintiff's right shoulder on November 3, 2013, she also opined, on October 6, 2013, that Plaintiff could lift ten pounds frequently and twenty pounds occasionally and carry ten pounds occasionally. Dr Aziz also opined that Plaintiff could occasionally reach and push or pull with his right hand.

Accordingly, there is record evidence that Plaintiff's shoulder pain does not significantly limit Plaintiff's ability to do basic work activities, including lifting, carrying, pushing, pulling and reaching. *See* 20 C.F.R. § 404.1521(b)(1). Therefore, it was not error for the ALJ to conclude that Plaintiff's shoulder pain is not severe.

In any event, where, as here, "an ALJ has omitted an impairment from step two of the sequential analysis, other courts have declined to remand if the ALJ clearly considered the effects of the impairment in the remainder of his analysis." *Chavis v. Astrue*, No. 07-CV-0018, 2010 WL 624039, at *12 (N.D.N.Y. Feb. 18, 2010). *See also* 20 C.F.R. § 404.1523 (ALJ required to consider the "combined effect of all of [plaintiff's] impairments without regard to whether any such impairment, if considered separately would be of sufficient severity"). Here, the ALJ did not deny benefits based on the lack of a severe impairment. Moreover, it is clear

8

that the ALJ did consider Plaintiff's shoulder impairment in the reminder of her decision. Accordingly, even if the ALJ's failure to find Plaintiff's shoulder impairment severe at step two of the sequential analysis is error, it is harmless. *See Ellis v. Comm'r of Soc. Sec.*, No. 11-CV-2305, 2012 WL 5464632, at *5 (N.D.N.Y. Sept. 7, 2012). Therefore, remand is not necessary on this basis.

### B. Whether the ALJ Properly Weighed the Opinion of Plaintiff's Medical Sources

After carefully considering the matter, the Court answers this question in the affirmative, generally for the reasons stated in Defendant's memorandum of law. (Dkt. No. 11 at 9-13 [Def.'s Mem. of Law].) The Court would only add the following analysis.

First, it is important to note that the ALJ must consider every medical opinion of record. *See* 20 C.F.R. § 404.1527(c). The opinion of a treating physician is entitled to controlling weight when (1) the opinion is well supported by medically acceptable clinical and laboratory diagnostic techniques, and (2) the opinion is consistent with other substantial evidence in the record, such as opinions of other medical experts. 20 C.F.R. § 404.1527(d)(2); *Halloran v. Barnhart*, 362 F.3d 28, 31-32 (2d Cir.2004); *Brogan-Dawley v. Astrue*, 484 F. App'x 632, 633-34 (2d Cir. 2012). When controlling weight is not given, the ALJ should consider the following factors to determine the proper weight assigned to a treating physician's opinion: (1) frequency of the examination and the length, nature and extent of the treatment relationship; (2) the evidence in support of the opinion; (3) the opinion's consistency with the record as a whole; and (4) whether the opinion is from a specialist. *See* 20 C.F.R. § 404.1527(c); *Shaw v. Chater*, 221 F.3d 126, 134 (2d Cir. 2000). Regulations require ALJs to set forth his or her reasons for the weight assigned to a treating physician's opinion. *See Shaw*, 221 F.3d at 134.

9

Where controlling weight is not given to the opinion of a treating physician, an ALJ's failure to explain the weight given to the opinion of other treating sources or a State agency medical consultant is legal error. *See Richardson v. Barnhart*, 443 F. Supp. 2d 411, 425 (W.D.N.Y. 2006) (citing 20 C.F.R. § 404.1527(c), (e)). *See also Stytzer v. Astrue*, No. 07-CV-811, 2010 WL 3907771, at *7 (N.D.N.Y. Sept. 30, 2010) ("Unless the treating source's opinion is given controlling weight, the administrative law judge must explain in the decision the weight given to the opinions of a State agency medical or psychological consultant or other program physician or psychologist, as the administrative law judge must do for any opinions from treating sources, nontreating sources, and other nonexamining sources who do not work for [the agency].") (quoting 20 C.F.R. § 416.927); *Dioguardi v. Comm'r of Soc. Sec.*, 445 F. Supp. 2d 288, 295 (W.D.N.Y. 2006) (in light of the fact that the ALJ failed to afford the treating physician's opinion controlling weight, the opinion of the consultative examiner "takes on particular significance").

Plaintiff argues that the ALJ failed to specify the weight assigned to the opinions of treating physicians, Ayesha Aziz, M.D., Jeannine Bordonaro, M.D. and R. Thomas Keller, M.D. and unreasonably relied on the opinions of non-treating medical sources, Sandra Boehlert, M.D., Mary McLarnon, M.D., Dennis M. Noia, Ph. D. and Hillary Tzetzo, M.D.

To be sure, the record contains only treatment notes from Drs. Bordonaro and Keller, rather than a full assessment of Plaintiff's abilities and restrictions. Social Security regulations define medical opinions as "statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of your impairment(s), including your symptoms, diagnosis and prognosis, what you can still do despite impairment(s), and your physical or mental restrictions." 20 C.F.R. § 404.1527(a)(2). Here, the treatment notes

of Drs. Bordonaro and Keller contain records of symptoms and diagnoses but are devoid of judgments regarding what Plaintiff can or cannot do relative to his diagnoses and symptoms. Accordingly, these treatment notes do not constitute medical opinions warranting the ALJ's consideration in support of her disability determination.

The referenced opinion by Dr. Aziz was provided on October 6, 2013, well after the relevant period under consideration and, in any event, supports the ALJ's RFC determination. Consequently the ALJ's failure to consider this opinion was not error.

Moreover, the ALJ's reliance on the opinions of consultative examiners, Drs. Boehlert and Noia as well as State Agency medical consultants, Drs. McLarnon and Tzetzo, was not error, especially given the lack of opinion evidence from Plaintiff's treating physicians. An ALJ is entitled to rely upon the opinions of both examining and non-examining State agency medical consultants, since those consultants are deemed to be qualified experts in the field of social security disability. *See* 20 C.F.R. §§ 404.1512(b)(6), 404.1513(c), 404.1527(e). *See also Little v. Colvin*, No. 14-CV-63, 2015 WL 1399586, at *9 (N.D.N.Y. Mar. 26, 2015) ("State agency physicians are qualified as experts in the evaluation of medical issues in disability claims. As such, their opinions may constitute substantial evidence if they are consistent with the record as a whole.") (citations omitted).

Accordingly, the ALJ did not err in evaluating the medical opinions of record. Consequently, remand is not necessary on this basis.

C.     **Whether the ALJ Properly Assessed Plaintiff's RFC**

After carefully considering the matter, the Court answers this question in the affirmative, generally for the reasons stated in Defendant's memorandum of law. (Dkt. No. 11 at 13-16 [Def.'s Mem. of Law].) The Court would only add the following analysis.

11

RFC is defined as

> what an individual can still do despite his or her limitations ... Ordinarily, RFC is the individual's maximum remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis, and the RFC assessment must include a discussion of the individual's abilities on that basis. A regular and continuing basis means 8 hours a day, for 5 days a week, or an equivalent work schedule.

*Melville v. Apfel*, 198 F.3d 45, 52 (2d Cir.1999) (quoting SSR 96-8p, 1996 WL 374184, at *2). "In assessing a claimant's RFC, the ALJ must consider all of the relevant medical and other evidence in the case record to assess the claimant's ability to meet the physical, mental, sensory and other requirements of work." *Domm v. Colvin*, No. 12-CV-6640, 2013 WL 4647643, at *8 (W.D.N.Y. Aug. 29, 2013) (citing 20 C.F.R. § 404.1545(a)(3)-(4)). The ALJ must consider all of the relevant evidence, including medical opinions and facts, physical and mental abilities, non-severe impairments, and the plaintiff's subjective evidence of symptoms. *See* 20 C.F.R. § 404.1545(b)-(e). The ALJ must consider RFC assessments made by acceptable medical sources and may consider opinions from other non-medical sources to show how a claimant's impairments may affect his ability to work. *See* 20 C.F.R. § 404.1513(c)(d). Finally, an ALJ's RFC determination "must be set forth with sufficient specificity to enable [the Court] to decide whether the determination is supported by substantial evidence." *Ferraris v. Heckler*, 728 F.2d 582, 587 (2d Cir.1984).

Plaintiff argues that the ALJ's RFC determination is erroneous because it is "contrary to and at odds with the cumulative medical evidence." (Dkt. No. 10 at 22 [Pl.'s Mem. of Law].) Defendant disagrees.

Here, the ALJ found that Plaintiff has the RFC to perform light work, which is defined as the ability to lift no more than twenty pounds at a time with frequent lifting or carrying of objects weighing up to ten pounds, and requiring a good deal of walking or standing. *See* 20 C.F.R. § 404.1567(b). In addition, the ALJ found that Plaintiff retains the ability to understand and follow simple instructions and directions, perform simple tasks with supervision and independently, maintain attention and concentration for simple tasks, regularly attend to a routine and maintain a schedule, relate to and interact appropriately with others to the extent necessary to carry out simple tasks, and handle simple work-related stress in that he can make decisions directly related to the performance of simple tasks in a position with consistent job duties that does not require Plaintiff to supervise or manage the work of others.

In support of her RFC determination, the ALJ cites the opinions of consultative examiners, Drs. Noia and Boehlert as well as State Agency non-examining consultants, Drs. Tzetzo and McLarnon. The ALJ's physical RFC is supported by the February 16, 2012 opinion of Dr. Boehlert, who, after an extensive examination and evaluation of Plaintiff, concluded that Plaintiff has mild limitation to heavy ambulation and heavy exertion in the standing position, based on the diagnoses of right ankle pain, likely arthritis, and right knee pain. (T. 470.) Dr. McLarnon, who reviewed all of the evidence in Plaintiff's file, adopted the February 28, 2012 RFC determination of an Agency disability analyst that Plaintiff can lift and/or carry up to twenty pounds occasionally and ten pounds frequently and can stand and/or walk and sit, with normal breaks, for about six hours in an eight hour workday. (T.118-123, 497.) The ALJ's mental RFC is supported by the February 16, 2012 opinion of Dr. Noia that Plaintiff appears to be capable of understanding and following simple instructions and directions, performing simple and some complex tasks with supervision and independently, maintaining attention and

13

concentration for tasks, learning new tasks, making appropriate decisions, and relating to and interacting moderately well with others.  Dr. Noia further opined that Plaintiff can regularly attend to a routine and maintain a schedule.  Finally, Dr. Noia opined that Plaintiff appears to be having some difficulty dealing with stress.  (T. 466.)  State Agency Psychiatrist, Dr. Tzetzo, completed a Psychiatric Review Technique form on February 22, 2012, at which time he opined that Plaintiff had no restrictions to activities of daily living, mild difficulties in maintaining social functioning and concentration, persistence or pace, and that Plaintiff never experienced an episode of deterioration of extended duration.  (T. 473-487.)

Moreover, the October 6, 2013 opinion of Dr. Aziz does not contradict, but instead, supports the ALJ's RFC determination.  Therefore, the ALJ's RFC determination is supported by substantial evidence.  Accordingly, remand is not necessary on this basis.

### D. Whether the ALJ Erred at Step Five By Failing to Obtain the Opinion of a Vocational Expert

After carefully considering the matter, the Court answers this question in the negative, generally for the reasons stated in Defendant's memorandum of law.  (Dkt. No. 11, at 16 [Def.'s Mem. of Law]).  The Court would only add the following analysis.

Here, at step five of the sequential analysis, the ALJ did not obtain the opinion of a vocational expert in determining whether there are jobs in the national economy that Plaintiff can perform.  Instead, the ALJ decided, relying solely on the Medical-Vocational guidelines, that there are jobs in the national economy that Plaintiff can perform.  Plaintiff argues that the ALJ erred in failing to obtain the opinion of a vocational expert because, due to Plaintiff's non-exertional limitations, reliance on the Grids was inappropriate.  Defendant counters that the ALJ's decision at step five was based on substantial evidence, and that reliance on the Grids is proper even where, as here, nonexertional limitations exist.

At step five of the sequential analysis, the Commissioner can usually meet his burden to establish that, if a plaintiff is unable to perform his past work, there is other work which he could perform, by reliance on the Medical-Vocational guidelines contained in 20 C.F.R. Part 404, Subpart P, App. 2, commonly referred to as "the Grids." *See Baldwin v. Astrue*, No. 07-CV-6958, 2009 WL 4931363, at *20 (S.D.N.Y. Dec. 21, 2009). However, when a plaintiff suffers from significant nonexertional limitations that significantly limit his employment opportunities, exclusive reliance on the Grids is inappropriate. *See Baldwin*, 2009 WL 4931363, at *27 (citing *Bapp v. Bowen*, 802 F.2d 601, 605 (2d Cir.1986)). "A plaintiff's range of potential employment is significantly limited when he suffers from the 'additional loss of work capacity beyond a negligible one or, in other words, one that so narrows a [plaintiff's] possible range of work as to deprive him of a meaningful employment opportunity.'" *Id.* (quoting *Bapp*, 802 F.2d at 606). However, "the mere existence of a nonexertional impairment does not automatically preclude reliance on the guidelines." *Zabala v. Astrue*, 595 F.3d 402, 410-411 (2d Cir. 2010) (citing *Bapp*, 802 F.2d at 603). Where, as here, an ALJ determines that a Plaintiff's mental condition does not limit his ability to perform unskilled work, reliance on the Grids without benefit of a vocational expert is permissible. *See id.*, at 411. Accordingly, Plaintiff's argument that remand is required on this basis is without merit.

**ACCORDINGLY**, it is

**ORDERED** that Plaintiff's motion for judgment on the pleadings (Dkt. No. 10) is **<u>DENIED</u>**; and it is further

**ORDERED** that Defendant's motion for judgment on the pleadings (Dkt. No.11) is **<u>GRANTED</u>**; and it is further

**ORDERED** that Defendant's decision denying disability benefits is **AFFIRMED**; and it is further

**ORDERED** that Plaintiff's complaint (Dkt. No. 1) is **DISMISSED**.

Dated: June 25, 2015
Syracuse, New York

Hon. Glenn T. Suddaby
U.S. District Judge